# Court of Appeals, State of Michigan

## ORDER

People of MI v Emmanuel Jerome Beverly

Docket No. 326199

LC No. 14-7348-01

Michael F. Gadola
Presiding Judge

Deborah A. Servitto

Douglas B. Shapiro
Judges

This Court orders that the motion to clarify/correct opinion is GRANTED because the first sentence of Judge Shapiro's September 20, 2016 concurring opinion transposed the terms "waived" and "forfeited." In order to correct this error, the Court orders that the September 20, 2016 opinions are hereby VACATED, and issues the attached opinions.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

NOV 0 1 2016

Date

Chief Clerk

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EMMANUEL JEROME BEVERLY,

Defendant-Appellant.

UNPUBLISHED
November 1, 2016

No. 326199
Wayne Circuit Court
LC No. 14-007348-FC

Before: GADOLA, P.J., and SERVITTO and SHAPIRO, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(a), and second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(a). The trial court sentenced him to concurrent prison terms of 30 to 60 years for the CSC I conviction and 10 to 15 years for the CSC II conviction. We affirm defendant's convictions, but remand for resentencing.

## I. FACTS AND PROCEDURE

This case involves defendant's sexual assault of his seven-year-old male cousin. At the time of the incident, defendant lived at his grandmother's home in Hamtramck and the cousin also lived in the home. Testimony at trial showed that defendant put either his finger or his penis in the victim's anal opening and used his hand to touch the child's genital area. After the incident, the victim told his sister about what occurred, and the sister informed the victim's mother, who examined the child, found blood in his buttocks, and called the police. The police arrested defendant at the home, and the victim's mother took him to the hospital for a physical examination, which revealed tearing and decreased tone in the rectal area. The examining physician testified that the injuries were indicative of something being inserted into the child's rectum and could result from a single incident, but most likely resulted from multiple incidents.

Before trial began, the trial court declared the victim unavailable as a witness pursuant to MRE 804(a)(2) and (a)(4) because the child refused to talk to the court and to the prosecutor. Over defense counsel's objection, the trial court allowed the prosecutor to read the victim's preliminary examination testimony to the jury at trial. At the preliminary examination, the victim testified that defendant put his finger in his rectum and used his hand to tickle his genital area. At trial, the victim's sister and the examining physician both offered testimony suggesting that the victim said defendant put his penis, rather than his finger, into his anal opening. Thus,

-1-

during trial, the prosecutor moved to amend the charge of CSC I from finger in anal opening to "finger in anal opening and/or penis in anal opening." Over defense counsel's objection, the trial court granted the motion. The jury ultimately convicted defendant of both CSC I and CSC II.

## II. THE VICTIM'S PRELIMINARY EXAMINATION TESTIMONY

Defendant first argues that the trial court erred by finding that the victim was unavailable under MRE 804 and by admitting the child's preliminary examination testimony at trial. A trial court's factual finding on the issue of unavailability is reviewed for clear error. *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). Constitutional questions, such as those concerning the right to confront witnesses at trial, are reviewed de novo on appeal. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006). The decision whether to admit evidence is within the trial court's discretion and will be reversed only on a finding of an abuse of that discretion. *People v Duncan*, 494 Mich 713, 722; 835 NW2d 399 (2013). An abuse of discretion occurs if the trial court's decision falls outside the range of reasonable and principled outcomes. *Id*. at 722-723. Further, some decisions regarding the admission of evidence involve preliminary matters of law that are reviewed de novo. *Id*. at 723. Such questions of law include the interpretation of evidentiary rules. *Id*.

Defendant first claims that the victim was not unavailable pursuant to MRE 804(a)(2) and (a)(4), so the child's preliminary examination statements were inadmissible hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Pursuant to MRE 802, hearsay is generally inadmissible. However, the Michigan Rules of Evidence allow the admission of certain prior out-of-court statements when a witness is declared unavailable. *Duncan*, 494 Mich at 717. MRE 804(a) delineates five situations when a witness is unavailable, including when a declarant "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." MRE 804(a)(2).

The victim was seven years old at the time of the trial. The trial court questioned him extensively and received no response except a "No," to the question, "If I said I was a girl am I telling the truth?" The prosecutor then questioned him by playing the "yes/no game." The victim answered "yes" or "no" to a few generic questions, but he stopped answering when the prosecutor asked, "[S]o how old are you now?" He then refused to speak about defendant's actions. Returning to a yes or no format, the prosecutor asked the victim if he would talk in court about defendant and about what he did. The victim responded, "No." The prosecutor continued, "What if this nice Judge says you have to talk about it, will you do it then?" The record reflects that the victim had his fingers in his mouth and he was unresponsive. After defense counsel declined the opportunity to question the victim, the trial court again attempted to solicit a response from the child, but was unsuccessful. The trial court then declared the victim unavailable as a witness. It is clear from this record that the victim would not have testified on the relevant matters even if the trial court had explicitly ordered him to do so. Therefore, the trial court did not clearly err by declaring the victim unavailable under MRE 804(a)(2).

Under MRE 804(a)(4), a witness is unavailable if her or she is unable "to testify at the hearing because of . . . then existing physical or mental illness or infirmity." MRE 804(a)(4). " 'Infirmity' is defined as 'the quality or state of being infirm; lack of strength.' In turn, 'infirm'

is defined as 'feeble or weak in body or health, [especially] because of age.' " *Duncan*, 494 Mich at 725 (alteration in original), quoting *Random House Webster's College Dictionary* (1995). In this case, the victim was only seven years old at the time of trial. Although he was not visibly crying during questioning, he showed clear signs of mental and emotional weakness resulting from the limitations of his young age. Despite the presence of his father as an advocate, the victim became silent and unresponsive to simple questions, and put his fingers in his mouth. Given the record in this case, the trial court's finding of unavailability under MRE 804(a)(4) was likewise not clearly erroneous.

In a related matter, defendant contends that the trial court erred by not utilizing an alternate accommodation, specifically closed circuit television, to interview the victim. MCL 600.2163a includes a list of accommodations that courts may use to protect the welfare of a vulnerable witness. It is clear that the trial court attempted some accommodations in this case. The victim was initially questioned outside the presence of the jury and there was a support person present for his mental well-being, yet he persisted in refusing to testify. The mere fact that the trial court did not attempt to glean testimony by closed circuit television does not amount to reversible error in this case.

Next, defendant argues that the victim's preliminary examination testimony did not satisfy the requirements of MRE 804(b)(1), and its admission violated his rights under the Confrontation Clause. When a witness is unavailable, "testimony given by the person at an earlier hearing is not excluded by the hearsay rule if the party against whom the testimony is offered had an opportunity and similar motive to develop the testimony through cross-examination." *People v Meredith*, 459 Mich 62, 66-67; 586 NW2d 538 (1998), citing MRE 804(b)(1). Defendant argues that the victim's statements at the preliminary examination do not qualify as "former testimony" under MRE 804(b)(1) because they were not obtained under oath or affirmation. Defendant acknowledges that this argument is unpreserved because his counsel failed to raise it below. Generally, we review unpreserved matters for plain error affecting substantial rights. *Pipes*, 475 Mich at 278.

MRE 603 provides, "Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so." "[W]itnesses in judicial proceedings must swear or affirm that their testimony will be true." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015). A simple affirmation or promise by a young child to tell the truth satisfies the statutory and evidentiary requirements. See *Donkers v Kovach*, 277 Mich App 366, 374; 745 NW2d 154 (2008).

There is no evidence in the record that the victim promised to tell the truth before making his statements at the preliminary examination. Inadvertently, neither the trial court nor the prosecutor questioned the victim about his ability to tell the truth. However, defense counsel did not object at the time the victim made his statements. Recent authority from this Court indicates that a defendant's failure to object to unsworn testimony at the time the testimony is taken results in waiver of the issue. *People v Sardy*, ___ Mich App ___, ___; ___ NW2d ___ (2015); slip op at 11-12, citing *People v Kemmis*, 153 Mich 117, 117-118; 116 NW 554 (1908), *Mettetal v Hall*, 288 Mich 200, 207-208; 284 NW 698 (1939), and *People v Knox*, 115 Mich App 508, 511; 321

NW2d 713 (1982). This Court in *Sardy*, ___ Mich App at ___; slip op at 11, explained the following:

> Here, although defendant objected at the trial that the victim's preliminary examination testimony had not been given under oath or by affirmation, there was no objection at the time that the testimony was actually procured at the preliminary examination. Only an objection at the preliminary examination would have been meaningful, allowing the district court to take corrective action and prevent the error. While *Kemmis*, *Mettetal*, and *Knox* dealt with a failure to object at trial, with the complaining parties raising the issue of unsworn testimony for the first time on appeal, which varies from the procedural circumstances here, the waiver analysis is nonetheless applicable. This is so because the overriding principle arising from the caselaw is that one must object at the time the unsworn witness is giving the testimony, not at a later date. Given that preliminary examination testimony always presents the potential of being admitted at a future trial due to witness unavailability caused by injury, illness, death, flight, lack of recall, or other events or circumstances, it is incumbent on counsel to protect the record. Under *Kemmis*, *Mettetal*, and *Knox*, defendant waived the issue concerning the victim's unsworn testimony, and thus reversal is unwarranted.

Therefore, reversal based on defendant's argument is unwarranted because defense counsel failed to raise an objection to the victim's unsworn testimony at the preliminary examination.

The same result is also appropriate even if we were required to apply the plain error test because in this case no prejudice exists as a result of the court allowing the victim to testify without oath, affirmation, or a promise to tell the truth. The record shows no questioning or discussion regarding the truth of the victim's statements at the preliminary examination. Nonetheless, reversal is warranted only if a plain error resulted in the conviction of an actually innocent defendant or if the error seriously affected the fairness, integrity or public reputation of the proceedings regardless of the defendant's innocence. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). The victim's preliminary examination statements not only affirm that sexual abuse occurred, but also provide evidence that defendant was the perpetrator. Further, the error of failing to properly swear the victim did not undermine the integrity of the proceedings. The victim responded to multiple questions by the prosecutor, and the defense cross-examined the child. Furthermore, and contrary to defendant's assertions on appeal, the victim's statements at the preliminary examination were not the sole evidence linking defendant to the crime. The victim's mother testified that, based on information the child gave her, she examined his buttocks and saw blood, confronted defendant, and called the police. The examining physician testified that the victim told him that defendant put his penis in his rectum, and he complained of pain in the area. The physician also provided medical testimony that the victim's physical injuries were the result of sexual abuse. As in *Sardy*, under either standard of review employed, reversal is not warranted.

Regarding defendant's claim of a Confrontation Clause violation, "[t]he United States Supreme Court has recognized that while a preliminary examination 'is ordinarily a less searching exploration into the merits of a case than a trial,' the Confrontation Clause can be satisfied if a defendant's cross-examination of the witness at the prelim[inary examination] was

not significantly limited in scope or nature and the witness was actually unavailable at trial." *Sardy*, ___ Mich App at ___; slip op at 6, quoting *California v Green*, 399 US 149, 166; 90 S Ct 1930; 26 L Ed 2d 489 (1970). Defendant had an opportunity to cross-examine the victim at the preliminary examination, and defense counsel did so. There was a similar motive to develop the victim's testimony at the preliminary examination and at the trial. In particular, the purpose of defense counsel's cross examination was to attempt to show that the claims of sexual assault were untrue. Given that the witness was unavailable and defendant had both the opportunity and a similar motive to develop the child's testimony, the preliminary examination transcript was admissible under MRE 804.

Defendant's related claim that he could not develop the evidence regarding the amended charge does not amount to a constitutional violation. At trial, count one was amended from finger in anal opening to "finger in anal opening and/or penis in anal opening" following testimony from the prosecutor's witnesses. There were inconsistencies between the victim's recollection and the testimony of these witnesses regarding the type of penetration that occurred. The inconsistencies were clear from the trial testimony and were emphasized during defense counsel's closing argument. The jury is responsible to determine the credibility of witnesses. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). Further, as discussed below, the result of the proceedings would have been the same whether the jury chose to believe that defendant penetrated the victim's anal opening with his finger or his penis. Because the claimed inability to question the victim at the preliminary examination about the amended charge did not constitute a significant limitation regarding the scope and nature of defendant's cross-examination of the child, no Confrontation Clause violation occurred. *Garland*, 286 Mich App at 7. Therefore, defendant has failed to demonstrate plain error requiring reversal.

## III. ADMISSION OF HEARSAY TESTIMONY

Defendant next asserts that the trial court erred by allowing the victim's sister to testify about the victim's statements to her after the incident. Because defense counsel did not object to the testimony on this basis below, our review is limited to plain error affecting defendant's substantial rights. *People v Kimble*, 470 Mich 305, 309, 312; 684 NW2d 669 (2004). Reversal is warranted only if a plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

At trial, the court allowed the victim's sister to testify regarding the victim's statements to her about the incident pursuant to MRE 803A. MRE 803A provides a hearsay exception for a child's "statement describing an incident that included a sexual act performed with or on the declarant by the defendant . . . to the extent that it corroborates testimony given by the declarant during the same proceeding, provided," in relevant part, "the statement is shown to have been spontaneous and without indication of manufacture." Defendant claims that the sister's testimony did not corroborate the victim's testimony because the victim did not testify at trial. As discussed above, the victim's preliminary examination testimony was properly read into evidence after the child was declared unavailable. Therefore, defendant's claim lacks merit.

Defendant further argues that the victim's statements to his sister were not sufficiently spontaneous to invoke MRE 803A because the statements were made in response to questioning.

In *People v Gursky*, 486 Mich 596, 614; 786 NW2d 579 (2010), our Supreme Court explained that "the mere fact that questioning occurred is not incompatible with a ruling that the child produced a spontaneous statement." However, for such a statement to fall within MRE 803A, "the child must broach the subject of sexual abuse, and any questioning or prompts from adults must be nonleading or open-ended . . . ." *Id.*

In this case, the victim's sister testified that the victim came into her room and woke her up. She noticed that he was crying and asked, "What's the matter, what's wrong?" The victim continued to cry. His sister then asked, "Did [defendant] touch you?" The victim explained that defendant "touched him on his butt, his stuff and he was playing with his stuff." He also said that defendant "put his stuff in his butt" and that "he played with it, he sucked it." The sister's question regarding whether defendant touched him broached the subject of sexual abuse and named a possible perpetrator. Therefore, we conclude that under *Gursky*, the victim's subsequent statements to his sister were not spontaneous for purposes MRE 803A.

The prosecution argues on appeal, however, that the victim's statements were alternatively admissible as excited utterances under the hearsay exception of MRE 803(2). We agree. Although the trial court relied on a different line of reasoning to admit the evidence, this Court will not reverse the trial court when it reached the right result for the wrong reason. *People v Ramsdell*, 230 Mich App 386, 406; 585 NW2d 1 (1998).

MRE 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." The primary requirements for excited utterances are "1) that there be a startling event, and 2) that the resulting statement be made while under the excitement caused by the event." *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998). A sexual assault constitutes a startling event for purposes of the rule. *Id.* at 553. The lack of ability to fabricate, rather than the lack of time to fabricate, is the focus of the excited utterance rule. *Id.* at 551.

"[W]hether a statement made in response to questioning should be excluded under MRE 803(2) depends on the circumstances of the questioning and whether it appears that the statement was the result of reflective thought." *Id.* at 553. In *People v Straight*, 430 Mich 418, 425-426; 424 NW2d 257 (1988), our Supreme Court held that statements made by a four-year-old victim one month after a sexual assault, immediately after a pelvic examination, and after repeated and emotional questioning by her parents were not excited utterances because it could not be determined whether the child was under the stress "caused by the event or condition" or by the stress caused by the medical examination and the questioning. Generally, a child's young age and a short time span between the assault and statement militate against the possibility of fabrication. *People v Layher*, 238 Mich App 573, 584; 607 NW2d 91 (1999).

The record in this case reflects that very little time had passed between the assault and the victim's statements to his sister. The examining physician testified that it was reported that the assault occurred at approximately 10:00 a.m., and the victim's mother testified that the victim informed his sister, who then woke the mother up at around 11:00 a.m. to inform her about the assault. The victim's sister testified that the victim woke her up, looked strange, and was crying at the time he made the statements in question. The victim made the statements in response to very brief questioning, and the circumstances presented do not show that the statements were

fabricated or the product of reflective thought. The young age of the victim, the short time period between the assault and the statements, and the fact that the child was visibly distraught before his sister asked him any questions, all support that the child made the statements under the stress of the assault, rather than the stress of questioning. Therefore, the trial court did not err by admitting the statements because they were admissible as excited utterances under MRE 803(2).

## IV. PROSECUTORIAL ERROR

Defendant next asserts that reversal is warranted because the prosecutor improperly elicited hearsay testimony at trial. Because defendant did not timely object to the prosecutor's conduct or request a curative instruction, our review of his claim is limited to plain error affecting substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

The test for prosecutorial error is whether the defendant was denied a fair and impartial trial. *Id.* We analyze claims of prosecutorial error on a case-by-case basis and evaluate the prosecutor's remarks in context. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). We will not "find error requiring reversal [if] a curative instruction could have alleviated any prejudicial effect." *Unger*, 278 Mich App at 235 (quotation marks and citation omitted).

Defendant contends that, although a video of the victim's interview at a place called Kids Talk was inadmissible, the prosecutor improperly elicited testimony from the officer-in-charge confirming that the video's contents were consistent with the victim's testimony. This is essentially an evidentiary issue framed as a claim of prosecutorial error. *People v Dobek*, 274 Mich App 58, 70; 732 NW2d 546 (2007). A prosecutor's good-faith effort to admit evidence does not constitute prosecutorial error. *Id.*

At trial, the officer testified that she took the victim to an interview at Kids Talk and identified a videotape of his interview. The prosecutor asked the officer if such videotapes are allowed to be played at trial. The officer responded, "No. Only one circumstance that they're allowed and that is if it's to show that they lied." The prosecutor then clarified, "To show inconsistencies?" The officer responded, "Correct."

Generally, a witness may not comment or provide an opinion on the credibility of another witness because credibility matters must be left for the jury. *Dobek*, 274 Mich App at 71. The officer testified about her background and experience, the practice of seeking a forensic interview in criminal sexual conduct cases, and the victim's demeanor and responsive nature during the interview. Her only reference to the absence of lying related to the reason the jury would not be permitted to view the videotape of the victim's interview. Defendant did not object to this testimony or the prosecutor's question that elicited the testimony. Even assuming plain error occurred, defendant has failed to establish innocence or damage to the fairness, integrity, or public reputation of the proceedings. *Unger*, 278 Mich App at 235. Given that the officer was a witness for the prosecutor and the prosecutor initiated a case against defendant, the jurors would likely understand that the officer believed the victim was telling the truth apart from the disputed testimony. *Dobek*, 274 Mich App at 71. Further, there was other corroborating evidence of the victim's account through both testimonial and physical evidence admitted at trial. Therefore, defendant's claim of prosecutorial error is without merit.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises multiple claims of ineffective assistance of counsel. In particular, defendant contends that counsel provided ineffective assistance by failing to object to the admission of the victim's preliminary examination statements on the basis that they were unsworn, the admission of the victim's sister's testimony at trial as hearsay, and the improper line of questioning of the officer-in-charge concerning the contents of the videotaped interview. To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or an evidentiary hearing in the trial court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Because defendant failed to raise this claim below, our review is limited to errors apparent on the record. *Id*.

To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate "(1) that counsel's representation fell below an objective standard of reasonableness, and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (quotation marks and citation omitted). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson*, 261 Mich App 657, 663; 683 NW2d 761 (2004). Decisions regarding what evidence to present, how to question witnesses, and whether to raise objections are presumed to be matters of trial strategy, and this Court will not second-guess counsel's strategic decisions nor will it analyze counsel's competence with the benefit of hindsight. *Unger*, 278 Mich App at 242-243, 253.

Defendant's assertion that his counsel was ineffective for failing to object to the admission of the victim's preliminary examination testimony because it was unsworn does not amount to reversible error. Counsel's failure to object to the testimony at the preliminary examination waived review of its admissibility under the theory that it was unsworn. Therefore, any objection by counsel at trial would have been futile because the issue was waived. *Sardy*, ___ Mich App at ___; slip op at 11. Counsel cannot be deemed ineffective for failing to raise a futile objection. *Putman*, 309 Mich App at 245. Further, defendant cannot show that admission of the victim's preliminary examination testimony was prejudicial under the circumstances because there was significant corroborating evidence presented at trial of the crime and defendant's role as the perpetrator. Therefore, reversal is unwarranted.

Defendant's argument that his counsel was ineffective for failing to object to the sister's testimony regarding the victim's statements likewise fails. As discussed above, the victim's statements to his sister were admissible as excited utterances. Counsel cannot be deemed ineffective for failing to raise a meritless objection. *Putman*, 309 Mich App at 245.

Defendant finally argues that his counsel provided ineffective assistance by failing to object to the prosecutor's improper line of questioning of the officer-in-charge concerning the contents of the videotaped interview. "[T]here are times when it is better not to object and draw attention to an improper comment." *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Defense counsel may have reasonably believed that it was better not to draw the jury's attention to the inference that the victim's interview statements were consistent with his statements at the preliminary examination. The questioning was brief, and there was no discussion of the substance of the statements made during the interview. Therefore, defendant

has failed to overcome the presumption that counsel's conduct was sound trial strategy. *Unger*, 278 Mich App at 242. In sum, defendant was not denied the effective assistance of counsel.

## VI. JURY INSTRUCTIONS

Defendant contends that the trial court erred by instructing the jury that it need not agree on the method of penetration in this case and should have sua sponte provided a special unanimity instruction. Where, as here, a defendant fails to object to a jury instruction or forfeits an instructional issue, our review is limited to plain error affecting substantial rights. *People v Gonzalez*, 256 Mich App 212, 225; 663 NW2d 499 (2003). Reversal is unwarranted if the instructions fairly presented the issues for trial and sufficiently protected a defendant's rights. *Id*.

A trial judge must instruct the jury regarding the applicable law, and fully and fairly present the case to the jury. *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005). The instructions must include all of the elements of the charged crime and any material issues, defenses, and theories for which there is evidentiary support. *Id*. The validity of the verdict is presumed, and the defendant bears the burden of showing that an instructional error was outcome determinative. *People v Rodriguez*, 463 Mich 466, 473-474; 620 NW2d 13 (2000). An error is outcome determinative if it undermines the reliability of the verdict, which requires the reviewing court to consider the nature of the error in light of the strength and weight of the untainted evidence. *Id*. at 474.

Defendant was charged, in relevant part, with CSC I, which requires proof of a sexual penetration with another person who is under 13 years of age. MCL 750.520b(1)(a). At trial, the prosecutor moved to amend the information to change the charge of CSC I from finger in anal opening to "finger in anal opening and/or penis in anal opening." Over defense counsel's objection, the trial court granted the motion. The trial court then instructed the jury as follows:

> The jury has to be unanimous about whether the defendant penetrated [the victim]'s anal opening with either his finger or his penis. The jury does not have to [be] unanimous about which of the defendant's body part[s] entered [the victim]'s anal opening.

Defendant contends that the jury should have been instructed that it must unanimously agree on which act of penetration was proven beyond a reasonable doubt and cites *People v Cooks*, 446 Mich 503, 524; 521 NW2d 275 (1994), in support. However, this case is analogous to *People v Johnson*, 187 Mich App 621, 629-630; 468 NW2d 307 (1991), in which this Court held that if "a statute lists alternative means of committing an offense which in and of themselves do not constitute separate and distinct offenses, jury unanimity is not required with regard to the alternate theory." Here, defendant committed an act of sexual penetration at a single time and location. The use of a finger or a penis to penetrate the victim's anal opening were merely alternative means to establish a single element CSC I. See *People v Chelmicki*, 305 Mich App 58, 68; 850 NW2d 612 (2014) ("The alternative theories each relate to a single element of the offense, and are merely different ways of establishing that element."). The two different theories do not constitute "separate and distinct offenses," requiring jury unanimity to the alternate theory. *Johnson*, 187 Mich App at 630. In that regard, "[w]here there is a single sexual penetration, the various aggravating circumstances . . . constitute alternative means of proving a

single CSC I offense and would not support convictions of separate and distinct CSC I offenses." *People v Gadomski*, 232 Mich App 24, 31; 592 NW2d 75 (1998). Accordingly, defendant was properly convicted of CSC I even if some jurors believed he penetrated the victim with his finger, and others believed he penetrated the victim with his penis. Given the circumstances, the trial court's unanimity instruction was sufficient to protect defendant's rights.

## VII. SENTENCING

Defendant's final argument is that he is entitled to resentencing because the trial court failed to consider his applicable sentencing guidelines range before imposing sentence. The prosecution agrees on appeal that defendant is entitled to resentencing. The record contains no evidence that the trial court ever scored the variables applicable to defendant's offense or considered his applicable sentencing guidelines range, which it was required to do. See MCL 777.21(2); *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). Further, as our Supreme Court recently clarified, although the sentencing guidelines are no longer mandatory, trial courts " 'must consult those Guidelines and take them into account when sentencing.' " *Lockridge*, 498 Mich at 391 (citation omitted). Therefore, because the trial court did not score or consider defendant's applicable guidelines range before imposing sentence, defendant is entitled to resentencing.

We affirm defendant's convictions, but remand for resentencing. We do not retain jurisdiction.


/s/ Michael F. Gadola

-10-